IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| NANCY FECHNER, individually and as Personal Representative for the ESTATE OF DENNIS FECHNER (deceased), | ) ) ) ) | No. 35291-9-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| | ) | PUBLISHED OPINION |
| SCOTT VOLYN, doing business as VOLYN LAW FIRM, PLLC, | ) ) ) | |
| Respondent, | ) ) | |
| JANE DOE VOLYN, wife of Scott Volyn, | ) ) | |
| Defendant. | ) | |

PENNELL, J. — Nancy Fechner, on behalf of herself and as personal representative for the estate of Dennis Fechner, appeals a summary judgment order dismissing her legal malpractice claims against Scott Volyn and the Volyn Law Firm (collectively "Volyn"). Because material issues of fact exist as to whether Mrs. Fechner can state a claim against Volyn, we reverse and remand for further proceedings.

FACTS

Dennis Fechner died on October 28, 2009. His wife, Nancy Fechner, believes his death was caused by inappropriate medications prescribed by his dermatologist,

Dr. Daniel Dietzman. The date of Dr. Dietzman's last prescription for Mr. Fechner was in May 2009.[1] Mrs. Fechner took her potential medical negligence wrongful death claim to Scott Volyn at the Volyn Law Firm.

According to Mrs. Fechner, she first met with Mr. Volyn in October 2011. Mrs. Fechner states Mr. Volyn told her he thought she had a good case and would take it on. According to Mr. Volyn, he did not begin representing Mrs. Fechner until at least August 2012 when Mrs. Fechner signed paperwork authorizing Volyn to investigate her case.

Volyn formally withdrew from representing Mrs. Fechner on April 5, 2013. Mrs. Fechner then found another attorney and on October 25, 2013, filed her complaint against Dr. Dietzman for wrongful death due to injuries resulting from health care. Mrs. Fechner later stipulated to dismissal of her lawsuit against Dr. Dietzman due to a belief that the applicable statute of limitations had lapsed.

Mrs. Fechner subsequently brought a legal malpractice action against Volyn. The trial court granted Volyn summary judgment dismissal of Mrs. Fechner's claims. Mrs.

---

[1] We do not recount the factual basis for Mrs. Fechner's medical negligence complaint against Dr. Deitzman as it is not relevant to the issues on appeal.

Fechner unsuccessfully moved for reconsideration of the trial court's dismissal order.

Mrs. Fechner appeals.

## ANALYSIS

*Medical negligence statute of limitations*

The parties' initial dispute is purely legal and pertains to when Mrs. Fechner's claims against Dr. Dietzman would have accrued for statute of limitations purposes. Our starting point is the medical negligence statute of limitations (MNSOL). The MNSOL requires a claim for medical negligence be filed either within three years of a negligent act or omission or one year from when the negligence should have been discovered, whichever date is later. RCW 4.16.350. In cases where a plaintiff's claim is for "wrongful death resulting from negligent health care," the MNSOL applies, not the general torts catchall limitations period set forth at RCW 4.16.080(2). *Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 29, 384 P.3d 232 (2016).

According to Mrs. Fechner, the MNSOL's three-year period began running when Dr. Dietzman last prescribed the allegedly inappropriate medication to Mr. Fechner in May 2009. Because Mrs. Fechner by her own admission first learned the impact of Dr. Dietzman's prescription at the time of her husband's death, she claims the MNSOL's one-year discovery period would have started to run in October 2009. Given these two

available start dates, Mrs. Fechner contends the statute of limitations on the claims against Dr. Dietzman would have expired in May 2012, unless a request for mediation under RCW 7.70.110 was made prior to that date. Had a timely request for mediation been made, the MNSOL would have been tolled until May 2013. But because no mediation request was made prior to May 2012, Mrs. Fechner argues the statute of limitations for the claims against Dr. Dietzman expired in May 2012.

Volyn contends that any claims based on wrongful death accrued on the date of Mr. Fechner's death, October 28, 2009, regardless of the date of the negligent act or omission that led to death. Thus, the latest expiration date of Mrs. Fechner's claims without a mediation request under RCW 7.70.110 was October 28, 2012. Because a mediation request was submitted in September 2012, Volyn claims the statute of limitations for Mrs. Fechner's wrongful death claims was extended to October 28, 2013.

According to Volyn, the Supreme Court's decision in *Fast* establishes that when a medical negligence claim manifests itself as a wrongful death action, the statute of limitations does not accrue until the date of death. *Fast* addressed a medical negligence case involving the wrongful death of an unborn child. 187 Wn.2d at 33. The Fasts requested mediation several days shy of the three-year anniversary of their child's death. *Id*. at 31-32. Thus, they claimed under the MNSOL the time period for filing a legal

4

claim had been extended an additional year. *Id*. at 33. The medical provider defendants

countered that the MNSOL did not apply to wrongful death actions. *Id*. Instead, the

general torts catchall three-year limitation period applied. *Id*. Since the catchall three-

year limitation period does not include a one-year tolling provision for a good faith

mediation request, the defendants claimed the plaintiffs' complaint was untimely.

*Id*. at 33, 37.

The Supreme Court agreed with the Fasts that wrongful death actions based on

medical negligence fall under the MNSOL. *Fast*, 187 Wn.2d at 33-34. The court noted

that its holding might sometimes work an injustice to plaintiffs. *Id*. at 39. Because the

three-year MNSOL is triggered by the act of negligence, not the date of death, the time

for filing a claim could expire even before death. *Id*. Nevertheless, in the case at bar, no

injustice was at risk since the death of the Fasts' child "and last act/omission of health

care were virtually simultaneous." *Id*.

Based on *Fast*, it is apparent that any claims against Dr. Dietzman accrued on the

last date of alleged negligence. This was in May 2009. The current case is not like *Fast*

where death and the last negligent act or omission were virtually simultaneous. Had Mr.

Fechner not died for several years after his treatment and surgery, the claims for medical

negligence might have expired prior to death, unless saved by the one-year discovery

provision of RCW 4.16.350 or the one-year tolling provision of RCW 7.70.110. Because

the MNSOL's three-year term began to run on the date of Dr. Dietzman's last alleged

negligent act or omission, the statute of limitations for any claims against Dr. Dietzman

would have expired in May 2012. Because there was no mediation request prior to May

2012, the limitations period became final at that point.

Contrary to Volyn's claims, Mrs. Fechner did not have a separate wrongful death

claim against Dr. Dietzman, governed by a different statute of limitations. *Fast* made

clear that all medical negligence claims are governed by the MNSOL, even if the medical

negligence results in death as opposed to some other sort of harm. Justice Madsen's

concurrence in *Fast* emphasized this point, recognizing that *Fast* altered the landscape of

"wrongful death jurisprudence" by carving out a special statute of limitations for

wrongful death causes of action based on medical negligence. *Fast*, 187 Wn.2d at 42

(Madsen, J., concurring). Justice Madsen warned that *Fast*'s statute of limitation rule was

based on unique statutory language and was therefore inapplicable to other types of

wrongful death claims. *Id*. at 43. Had *Fast* not applied to wrongful death claims, as

asserted by Volyn, then Justice Madsen's observations would have been off point. *Fast*

would have had nothing to do with wrongful death claims and the decision would not

need to be classified as an exception to the general rule regarding the statute of limitations

in wrongful death cases. We do not read Justice Madsen's concerns as having been so misguided. Instead, it is apparent that *Fast* applies to a wrongful death claim if the claim is based on medical negligence. There is no separate cause of action.

Even if the law permitted Mrs. Fechner a separate wrongful death claim against Dr. Dietzman (which it does not), summary judgment would still be inapplicable. A mediation request tolls the statute of limitations only in the medical negligence context. RCW 7.70.110. It does not apply to the general torts catchall statute of limitations. Accordingly, any separate wrongful death claim that Mrs. Fechner may have had against Dr. Deitzman would have expired on October 28, 2012, three years after the date of death. Because Mr. Volyn represented Mrs. Fechner during this period, Mrs. Fechner would still have a viable claim that Volyn failed to act on during the limitations period.

*Initiation of Volyn's representation of Mrs. Fechner*

The parties have a factual dispute over when Mr. Volyn began an attorney-client relationship with Mrs. Fechner. Mrs. Fechner contends Mr. Volyn began representing her in October 2011. Mr. Volyn claims representation did not begin until at least August 2012 when Mrs. Fechner executed a document entitled "Authority to Investigate." Clerk's Papers (CP) at 138. This factual dispute matters because if Mrs. Fechner is correct, then based on the MNSOL analysis, her claims against Dr. Dietzman would have

expired during Mr. Volyn's period of representation and Mrs. Fechner would be able to state a claim against Volyn for failing to take action during this time period. However, if representation did not begin until August 2012, then the limitations period would have expired prior to representation and Mrs. Fechner would not be able to make out a malpractice claim.

Whether an attorney-client relationship exists is a question of fact that depends on the totality of the circumstances. The date of a written agreement or receipt of funds does not necessarily dictate the beginning of an attorney-client relationship. *Bohn v. Cody*, 119 Wn.2d 357, 363, 832 P.2d 71 (1992). Instead, the existence of the relationship turns on the reasonable beliefs of the client and may be implied from the parties' conduct. *Id*.; *In re the Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983).

Volyn claims that, despite Mrs. Fechner's protestations, no competent evidence supports the view that the attorney-client relationship began prior to August 2012, when Mrs. Fechner formally granted Volyn authority to investigate these claims. According to Volyn, Mrs. Fechner unequivocally admitted in her deposition that she signed the authority to investigate form during her first meeting with Mr. Volyn. Volyn asserts that Mrs. Fechner is prohibited from submitting evidence of an earlier meeting date in order to

contradict the clear answers given during deposition. *See Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 429-30, 38 P.3d 322 (2002).

The problem with Volyn's analysis is that Mrs. Fechner never clearly stated that she first met with Mr. Volyn in August 2012 when she signed the authority to investigate document. The relevant portion of Mrs. Fechner's deposition testimony follows:

> Q. Take a look at what we have marked as Exhibit 16, which is authority to investigate document in which it says, "I have discussed a potential claim with [Volyn] arising out of the following incident, prescription use of Enbrel for Dennis Fechner," and then it says, "I have not employed Volyn Law Firm to file suit or to represent us as my legal attorneys. I authorize Volyn Law Firm to conduct an investigation of this incident with the understanding that the results of such investigation remain the property of Volyn Law Firm." And then it says, "Check one, Volyn Law Firm agrees to advance the costs involved in the conduct of this investigation." And it was signed August 8th of 2012. And then has your signature and it has [Mr. Volyn's] signature.
> You see that?
> A. I see that, but I have a question, please.
> Q. Okay.
> A. May I ask?
> Q. Go for it.
> A. It says here, "I have not employed Volyn Law Firm to file suit or to represent us as my legal attorneys."
> When I went in and talked to Mr. Volyn about taking the case, and we had talked about contingency basis and et cetera, he said he would look into everything and he said, yes, he says, just by looking at things and from what I told him, he said he felt I had a case but without looking into everything and investigating, he cannot give me anymore [sic] accurate answer than that, but—
> Q. When was that?
> A. That's when I went in to see him the first time.

> Q.  This was signed on August 8th of 2012.
> A.  Well, whenever that was, I had went in to see him and he had me sign this paper and there was a couple other papers he had me sign.  I don't know if it was giving him allowance to get information on records or what they were, I don't remember at this time, but . . .
> Q.  *So did you sign Exhibit 16 the first time you ever met Scott Volyn?*
> A.  *I can't remember if that was the first time—no, because when I went in for consultation the very first time and took the records to him to look at, I didn't sign anything at that time. It was like the next visit or the next couple visits that I did.*  He had—he said that he felt that I had a good case and he was—would take the case.

CP at 527-29 (emphasis added).

Far from clearly admitting that she signed the authority to investigate document during her first meeting with Mr. Volyn, Mrs. Fechner's deposition testimony indicates she did *not* sign the form during her first meeting.  Instead, she indicated she signed the form on either the second or the third meeting.

Mrs. Fechner has submitted competent evidence indicating she began working with Mr. Volyn during October 2011.  The most direct evidence is Mrs. Fechner's declaration, in which she states that to the best of her recollection she "took the case to Volyn on or about October 2011."  CP at 430.  Mrs. Fechner remembered this date because at the time Mr. Volyn withdrew from representation in April 2013, Mrs. Fechner wondered why Mr. Volyn would have handled her case "for a year and a half" before withdrawing.  *Id*. at 493.  Mrs. Fechner also articulated this thought process during her

deposition. *Id.* The declaration of Olin Ensley further supports Mrs. Fechner's claim that she believed Mr. Volyn was her attorney back in October 2011. *Id.* at 509.

The current record is sufficient to raise a material issue of fact as to when an attorney-client relationship arose between the parties. If Mrs. Fechner is able to prove that the attorney-client relationship was established prior to May 2012, then she will have a viable claim that Mr. Volyn failed to take action on her case before expiration of the applicable statute of limitations. Given these circumstances, Volyn is not entitled to summary judgment.

## CONCLUSION

We reverse the trial court's summary judgment order dismissing Mrs. Fechner's claims. This matter is remanded for further proceedings consistent with the terms of this opinion.

_____
Pennell, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, C.J.                Korsmo, J.

11